**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **KELLI BAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 5:25-CV-00470-MAS** |
| | ) | |
| **FRANK J. BISIGNANO, Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Kelli Baker ("Baker") appeals the Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court addresses the parties' competing briefs on the matter. [DE 9, 14]. This matter is fully ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

Baker protectively filed a DIB application on July 28, 2022, alleging disability beginning on April 10, 2020. [Administrative Transcript[1] ("TR") at 119–20, 392]. She alleges disability due to scoliosis, the deterioration of the cervical spine, dyslexia, asthma, OCD, comprehension issues, communication issues, memory issues, anemia, stomach issues, migraines, anxiety, and depression. [TR at 291]. Baker's claim was

[1] The Administrative Transcript is docketed at DE 8. The Court shall utilize the pagination generated by the Commissioner when referencing the Transcript.

initially denied on May 24, 2023, and denied upon reconsideration on December 13, 2023. [TR at 137, 143]. Administrative Law Judge ("ALJ") Boyce Crocker conducted a hearing on July 3, 2024, and an impartial Vocational Expert ("VE") appeared and testified. [TR at 78]. The ALJ ultimately concluded that Baker was not disabled under the Social Security Act. [TR at 41]. The Appeals Council then denied Baker's request for review. [TR at 1–6].

Baker was thirty-one years old at the alleged onset date. [TR at 254]. She attended school through twelfth grade. [TR at 117]. Previously, Baker was employed as a health aide for Accessible Home Health Care and Bluegrass Home Care Services. [TR at 116, 70, 86]. Within those positions, she regularly lifted patients; however, Baker testified that she now struggles to lift her ten-month-old child. [TR at 87, 89].

After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Baker suffers from the severe impairments of degenerative disc disease of the cervical spine, scoliosis, obesity, asthma, depression, migraines, and borderline intellectual functioning. [TR at 46]. The ALJ further explained that while the record documents complaints of, or references to, anemia, gastroesophageal reflux disease (GERD), obstructive sleep apnea, fatty liver, von Willebrand's disease, hypothyroidism, and degenerative disc disease of the lumbar spine, Baker did not establish preponderant evidence of more than minimal functional limitations persisting, or expecting to persist, continuously for at least twelve months. [TR at 47]. Thus, the ALJ found that the alleged impairments were not "severe" within the meaning of the Social Security Act. [TR at

47]. However, the ALJ concluded that the severe impairments did not meet or medically equal any Listing criteria, specifically noting Listings 11.00 and 11.02, among others, in reference to Baker's migraines, which is the impairment at issue in this appeal. [TR at 48]. Furthermore, the ALJ found that Baker had the residual functioning capacity ("RFC") to perform light work:

> [Baker] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, and crawl. The claimant can frequently reach overhead with the bilateral upper extremities. She must avoid concentrated exposure to loud noise work environments, pulmonary irritants, unprotected heights, and moving machinery. She can perform simple work tasks for extended periods of two-hour segments so long as the instructions are given orally or by demonstration. She can have occasional interactions with the public and she can adapt adequately to routine work conditions.

[TR at 53].

Based on her age, education, work experience, RFC, and the VE's opinion, the ALJ concluded that Baker could perform unskilled jobs at the light level of exertion, including assembly machine tender and cleaner. [TR at 71–72]. Accordingly, the ALJ determined that Baker was not under a disability, as defined in the Social Security Act, from April 10, 2020, through the date of his decision (September 3, 2024). [TR at 72].

## II. <u>LEGAL FRAMEWORK</u>

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir.

2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decisionmakers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might

also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). In other words, the ALJ's findings are conclusive if they are supported by substantial evidence.

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. *Id.* at § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 404.1520(a)(4)(iv). Finally, in the fifth step, the burden shifts to the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 404.1520(a)(4).

## III. ANALYSIS

On appeal, Baker raises two primary claims of error. First, she argues that the ALJ's finding that her migraines do not medically equal Listing 11.02B is not supported by substantial evidence and is the result of the ALJ's failure to apply Social Security Ruling 19-4p and properly evaluate whether the functional consequences of her migraines equal those of dyscognitive seizures. [DE 9, Page ID# 2359]. Baker also contends that the ALJ's RFC assessment as it pertains to her migraine symptoms is not supported by substantial evidence and does not reflect use of the proper legal standard under *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), and Social Security Ruling 16-3p. [DE 9, Page ID# 2366].

### A. Step Three

At Step Three, the claimant has the burden of establishing that her impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpart P, App. 1. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii). "Each listing specifies 'the objective medical and other findings needed to satisfy the criteria of that listing.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 20 C.F.R. § 416.925(c)(3)). The claimant must present "specific medical evidence to satisfy all of the criteria" of a particular listing. *Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 786 (6th Cir. 2010) (citing 20 C.F.R. § 416.925). If the ALJ determines that a claimant's impairment meets or equals a Listing, "the claimant is conclusively presumed to be disabled without further analysis." *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995).

Following the example set by other circuits, the Sixth Circuit explicitly instructs ALJs to "actually evaluate the evidence, compare it to [the relevant] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Reynolds*, 424 F. App'x at 416 (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000); *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)). However, the Sixth Circuit later clarified that a reviewing court may consider an ALJ's entire decision for sufficient factual findings to support their Step Three conclusion and determine whether meaningful judicial review is possible. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)).

Social Security Ruling 19-4p provides guidance in evaluating cases involving primary headache disorders. SSR No. 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). Regarding the classification of migraines under the Listing of Impairments, the Ruling states that "primary headache disorder is not a listed impairment in the Listing of Impairments (listings); however, we may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." *Id.* The Ruling further explains that "[e]pilepsy (listing 11.02) is the most closely analogous listed impairment" and that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)." *Id.*

Baker argues that her migraines are the medical equivalent of a dyscognitive seizure within the meaning of listing 11.02B. [DE 9, Page ID# 2359]. In relevant part, listing 11.02B provides:

> Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C)

20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. To determine if a primary headache disorder is the medical equivalent of a dyscognitive seizure as provided by listing 11.02B, ALJs consider:

> A detailed description from an AMS [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR No. 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).

Here, at Step Three, the ALJ found that Baker's impairments did not meet or medically equal the criteria for any listed impairment, concluding that "[t]he record does not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that the claimant's impairment(s) medically equal a listed impairment (20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,

416.920(d), 416.925 and 416.926))." [TR at 47]. As to Baker's migraines, the ALJ further explained:

> The claimant's migraines fail to meet or medically equal Listing 11.00 of Appendix 1 impairments. There is not a specific listing to address migraines and therefore the undersigned considered this condition under all the sections of Listing 11.00. Further, there is additional guidance for the consideration of headache disorder, which also is not a listed impairment in any of the listing of Appendix 1; however, guidance in SSR 19-4p indicates that listing 11.02 is the most closely analogous listing for an medically determinable impairment of a primary headache disorder. Considering the requirements of section 11.02, the objective findings in evidence do not satisfy any of the requirements therein. Further, the evidence does not show findings that satisfy any other requirement in the neurological listing of 11.00, *et seq*. The evidence shows the medical record fails to establish evidence of any neurological deficits. Specifically, the record fails to demonstrate evidence of epilepsy (11.02), a vascular insult to the brain (11.04), a benign brain tumor (11.05), Parkinsonian syndrome (11.06), cerebral palsy (11.07), spinal cord disorder (11.08), multiple sclerosis (11.09), amyotrophic lateral sclerosis (ALS) (11.10), post-polio syndrome (11.11), myasthenia gravis (11.12), muscular dystrophy (11.13) peripheral neuropathy (11.14), neurodegenerative disorders of the central nervous symptoms, such as Huntington's disease, Friedreich's ataxia, and spinocerebellar degeneration (11.17), traumatic brain injury (11.18), coma or persistent vegetative state (11.19), or motor neuron disorders, other than ALS (11.22). Accordingly, the undersigned finds that the claimant's migraines fail to meet or medically equal listing level severity.

[TR at 48].

Predominantly, Baker's argument at this Step relies on the holding of *Reynolds* requiring ALJs to "give an explained conclusion, in order to facilitate meaningful judicial review." 424 F. App'x at 416 (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)). Baker contends that the ALJ's analysis at Step Three was merely a conclusory statement that failed to provide any meaningful explanation as to why her migraines did not equal the listing. [DE 9, Page ID# 2364]. Further,

Baker argues that the ALJ evaluated whether she "literally had epilepsy," which falls short of the required equivalence analysis. [*Id.*].

To begin, Baker's argument seems to desire the imposition of the very same "heightened articulation standard" the Sixth Circuit declined to follow in *Bledsoe v. Barnhart*. 165 F. App'x 408, 411 (6th Cir. 2006). *Reynolds* does not impose such a rigid requirement. In fact, a reviewing court may consider an ALJ's entire decision for sufficient factual findings to support their Step Three conclusion and determine whether meaningful judicial review is possible. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (citing *Bledsoe*, 165 F. App'x at 411). The *Forrest* decision is in line with Social Security Ruling 17-2p, which provides:

> Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

2017 WL 3928306, at *4 (Mar. 27, 2017). Thus, the Court must consider the ALJ's decision as a whole to determine whether it provides an adequate basis for meaningful judicial review of the ALJ's equivalence finding. Accordingly, the undersigned will review the ALJ's RFC findings in the next Section, which addresses Baker's migraines in greater detail. First, however, the Court will undertake a review of the parties' remaining arguments regarding the ALJ's analysis at Step Three.

To begin, Baker takes issue with the ALJ's performance of "a 'meets' analysis," instead of "an 'equals' analysis." [DE 9, Page ID# 2361]. As a court in this District

recently found, Baker's "point of error is pure semantics." *Stamm v. Comm'r of Soc. Sec.*, No. 25-CV-13-DLB, 2026 WL 810552, at *3 (E.D. Ky. Mar. 24, 2026). Like in *Stamm*, the ALJ here explicitly stated that Baker's migraines failed "to meet or medically equal" a listing. [TR at 47–48]. Thus, Baker's argument that the ALJ failed to properly perform an "equals" analysis "either ignores or misconstrues the ALJ's statement." *Stamm*, 2026 WL 810552, at *3. Therefore, the argument is without merit.

In his Response Brief, the Commissioner correctly notes that, under *Reynolds*, a claimant must establish that her impairment is "at least equal in severity and duration to the criteria of any listed impairment" to establish medical equivalence. 424 F. App'x 411, 414 (6th Cir. 2011). The Commissioner argues that Baker failed to meet her burden at Step Three because the record contained no prior administrative medical finding or medical expert opinion supporting an equivalence finding. [DE 14, Page ID# 3284]. Indeed, Social Security Ruling 17-2p sets forth the following requirement:

> To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:
>
> 1. A prior administrative medical finding from an MC [medical consultant] or PC [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or
>
> 2. ME [medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or

3. A report from the AC's [Appeals Council] medical support staff supporting the medical equivalence finding.

2017 WL 3928306, at *3 (Mar. 27, 2017). In short, the Commissioner argues that the record is devoid of these findings and Baker, who did not file a Reply, has not established otherwise.

Upon review of the ALJ's decision and the record, this Court agrees that there is no prior administrative finding or expert evidence suggesting listing equivalence. [*See* TR at 107–18, 121–32 (MC/PC reports demonstrating no finding of listing equivalence)]. Thus, the ALJ had no evidentiary basis for finding Ruling 19-4p migraine-seizure equivalence. *See Weese v. Comm'r of Soc. Sec.*, No. 1:22-CV-2215, 2024 WL 4213314, at *23 (N.D. Ohio Sept. 17, 2024) ("[A]n ALJ may only find medical equivalence at the hearing level if the record contains supportive medical opinion findings from either a state agency consultant or a medical expert. Conversely, if the ALJ 'believes the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment,' SSR 17-2p provides that the ALJ need not obtain medical expert evidence, and in fact need not even 'articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment.'" (quoting SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017))).

Nonetheless, as previously stated, the Court will address whether the ALJ's opinion as a whole provides an adequate basis for meaningful judicial review of the ALJ's equivalence finding below.

## B. RFC EVALUATION

Baker also asserts that reversal and remand are warranted because the ALJ's evaluation of her migraine related symptoms was not supported by substantial evidence and does not reflect the proper evaluation standard under *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), and Social Security Ruling 16-3p. [DE 9, Page ID# 2368]. Specifically, Baker takes issue with the ALJ's evaluation of the intensity, persistence, and limiting effects of her migraines. [*Id.* at Page ID# 2367]. Baker posits that if the ALJ had "properly" evaluated her migraine symptoms, the RFC would have included additional limitations such as time off task, absenteeism, or reduced concentration, that could have affected the Step Five determination.

In assessing the RFC, the ALJ must consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929. A statement that a claimant is experiencing pain or other symptoms alone will not establish disability; there must be medical signs and laboratory findings which show existence of a medical impairment reasonably expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a).

In evaluating a claimant's subjective complaints of pain, the Sixth Circuit applies a two-part analysis. First, an ALJ must determine "whether there is objective medical evidence of an underlying medical condition." *Duncan*, 801 F.2d 847, 853 (6th Cir. 1986). If such a condition exists, the ALJ must examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a

severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* At this step, Social Security Ruling 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016), provides that an ALJ must also evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *See also* 20 C.F.R. § 404.1529; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

Once such an impairment is established, however, the ALJ may not reject a claimant's statements about the intensity or persistence of pain solely because they are not substantiated by objective medical evidence. 20 C.F.R. § 404.1529(c)(2); SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016). Instead, if the reported pain and/or symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the ALJ will consider the consistency of the claimant's statements with the record as a whole, including non-exhaustive factors such as evidence of daily activities, the frequency and intensity of symptoms, medication taken and any resulting side effects, and other curative measures taken. 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (3). Further, an ALJ should consider whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." *Id.* at § 404.1529(c)(3)–(4); *see also* SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016). As an example of inconsistency, mild medication and infrequency of dosages taken do not support claims of debilitating pain. *See Maher v. Sec'y of Health & Hum. Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989).

An ALJ is required to evaluate the claimant's symptoms and diminish her capacity for basic work activities to the extent that her alleged functional limitations and restrictions due to her symptoms can reasonably be accepted as consistent with the objective medical and other evidence. 20 C.F.R. § 404.1529. Generally, courts defer to an ALJ's credibility[2] determination because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Duncan*, 801 F.2d at 852 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1982), *cert. denied*, 461 U.S. 957 (1983)). Thus, reviewing courts typically will only disturb these findings for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011).

Here, the ALJ complied with the first step of the analysis. He discussed Baker's hearing testimony about her migraines, including that they caused blurred vision and nausea; last thirty to forty-five minutes; symptoms do not completely resolve for approximately three days after onset, causing Baker to feel drained of energy with her head sensitive and throbbing; and that certain smells or noises may trigger and/or aggravate her symptoms. [TR at 55, 99–100]. Additionally, he discussed Baker's reports, contained within her Headache Questionnaire, that she has headaches several times a month caused by stress, watching too much television, eating, hyperextending her neck, scents, and screens with symptoms of blurred vision

---

[2] SSR 16-3p superseded SSR 96-7p and eliminated use of the term "credibility," directing adjudicators instead to assess the consistency of a claimant's subjective statements with the objective and other evidence in the record. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). This shift in terminology does not alter the substance of the analysis required under *Duncan* and its progeny; it clarifies that the inquiry is not a character determination but an evidentiary one. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247–49 (6th Cir. 2007).

and nausea that can last an hour, and potentially return the following day. [TR at 54, 336–37]. Finally, he concluded that Baker's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [TR at 55].

Baker's principal contention is that the ALJ erred at the second step of the analysis by concluding that Baker's subjective statements regarding the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [TR at 55]. At this juncture, Baker argues that "the relevant issue was whether the medical evidence and the record as a whole supported the severity and limiting effects of the migraine symptoms alleged by" Baker. [DE 9, Page ID# 2367]. With this, Baker seems to imply that, upon finding an underlying medically determinable impairment, *Duncan* requires an ALJ to accept her allegations regarding the intensity or limiting effects of her symptoms as true; however, this argument conflates *Duncan*'s mandate. Moreover, the ALJ conducted a meaningful analysis supported by substantial evidence.

Concerning Baker's argument that the ALJ did not conduct a meaningful analysis of whether her migraines were reasonably capable of producing the symptoms alleged, the Court submits that the ALJ did, in fact, determine that this was the case, as stated above. [TR at 55]. Turning to Baker's contention that the ALJ improperly discounted the practical functional impact of her headaches despite

testimony and treatment records documenting recurring headaches, environmental triggers, nausea, blurred vision, and prolonged recovery periods, this Court disagrees.

Upon finding an underlying medically determinable impairment reasonably capable of producing the symptoms alleged, the ALJ continued on to conduct an extensive fifteen-page analysis of the record, including discussing the objective findings and Baker's statements concerning the intensity, persistence and limiting effects of her symptoms. In great detail, the ALJ discussed nearly five years of medical records submitted by Baker, noting consistent observations by medical personnel that Baker's head was normocephalic and that she exhibited no neurological deficits. Furthermore, the ALJ noted that an initial CT scan of Baker's head on April 10, 2020, following an assault at work, showed no acute intracranial abnormality. [TR at 57]. In June 30, 2020, Baker reported increased headaches since the April altercation. [TR at 58].

The ALJ also noted that an MRI of the brain, conducted on August 7, 2020, showed no acute traumatic findings or hemorrhagic signal abnormalities; however, it showed a small white matter change in the left frontal lobe consistent with migraines. [TR at 58–59, 581]. Additionally, the ALJ compared the results of that MRI with those of a 2018 exam, which showed a similar appearance of minimal increased signal findings in the left frontal lobe with likely sequela of migraines. [TR at 58–59, 581, 624–25]. The ALJ noted Baker's reports that her mother physically abused and hit her in the head repeatedly as a child. [TR at 59, 581, 624–25].

Later in his discussion, the ALJ noted that Baker visited a neurologist in November 2021 for her migraines, reporting that her medication was working well and she was having a maximum of four migraine days per month. [TR at 61, 625]. Although the ALJ did not mention it, the neurologist also acknowledged Baker's reports that she experienced nausea, no vomiting, photophobia, and phonophobia with mild to moderate throbbing pains, lasting several hours but effectively treated with rizatriptan. [TR at 625].

On June 30, 2022, Baker reported to her neurologist that she had experienced a headache intermittently for two weeks, which was not typical, as she normally did not get headaches very often. [TR at 64]. Although not acknowledged by the ALJ, Baker reported to the neurologist that she did not get headaches "very often" and occasional use of rizatriptan helped relieve symptoms on the day taken. [TR at 581]. She also noted that she had mostly discontinued the use of gabapentin because she was actively trying to conceive. [TR at 581]. At a five month follow up appointment, the ALJ noted Baker's reports that she was doing well off gabapentin and taking magnesium supplements, which were helping her migraines. [TR at 65, 1086]. She further reported that her migraines had improved, and estimated having four to five a month, with only one requiring medication. [TR at 65]. Furthermore, the administrative record reflects reports from Baker at this visit that her symptoms of photophobia, phonophobia, nausea, occasional vomiting, moderate throbbing pain, and headache lasted for one day. [TR at 1086]. The ALJ discussed that, at another follow-up on January 18, 2024, Baker reported experiencing approximately five

headaches a month since the birth of her son. [TR at 66, 2201]. Although not discussed in the ALJ's opinion, Baker denied any nausea, vomiting, or photophobia, although she reported experiencing phonophobia when her son cried. [TR at 2201]. Additionally, she reported reduced levels of medication intake and that magnesium oxide was helpful for management. [TR at 2201].

The ALJ also considered Baker's level of daily activity as a factor in determining the extent to which pain and other symptoms are of disabling severity. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ discussed Baker's day-to-day activities as exhibited by two function reports, noting that she was consistently able to perform light housework, fix meals, watch television, shop in stores, and take care of her child, before ultimately concluding that the record reflected no limitation in activities greater than those reflected in the RFC. [TR at 67–68]. Furthermore, the ALJ considered the medications used to alleviate Baker's alleged pain and other symptoms, finding that it did not suggest the presence of an impairment more limiting than found in the decision. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). The ALJ specifically noted that Baker testified to ongoing treatment for migraines and benefits from her medication. [TR at 69].

Finally, the ALJ walked through the opinions of the reviewing consultants, finding that the medical consultants were not persuasive. [TR at 69]. The ALJ noted that the medical consultants determined that Baker could perform work at the

medium level of exertion, a finding that the ALJ ultimately rejected in favor of a increased limitations to the level of light exertion. [TR at 69]. Importantly, though, the ALJ did note the consultants' observations of Baker's normal neurological findings, a normal MRI of the brain, and that the daily activities reported showed no need for further limitations. [TR at 69; 114–15; 129; 581]. The ALJ proceeded to compare the findings and observations of the consultants with the evidence in the medical record and Baker's testimony, specifically noting that she "continues to be treated for migraines with reports of four to five migraine days a month and benefits from her medication." [TR at 69].

Ultimately, the ALJ did not deny that Baker suffers from migraines; rather, he challenged their "intensity and severity" based on a longitudinal treatment record that documented meaningful improvement over the relevant period. *See* 20 C.F.R. § 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Through this, the ALJ found Baker's statements about the intensity, persistence, and limiting effects of her symptoms to be inconsistent with the medical evidence and other evidence in the record, providing that the evidence in the record did not support her allegations of totally incapacitating symptoms. [TR at 55, 70]. Over fifteen pages, the ALJ supported his RFC findings by analyzing Baker's testimony about her migraine symptoms, her extensive treatment history, the various reports provided through the evaluation process, and the opinions of the reviewing consultants. Though the ALJ could have drafted his opinion with more detail or precision, he "is not required to mention every piece of evidence but must [only] provide an 'accurate and logical bridge' between the

evidence and the conclusion that the claimant is not disabled[.]" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *see also Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (explaining that an ALJ's opinion must "build an accurate and logical bridge between the evidence and the result" (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996))). That is what the ALJ did here, and the Court finds his rationale sufficient under the applicable caselaw and regulations. *See Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *5 (6th Cir. May 26, 2023) (finding an adequate rationale where the ALJ considered the claimant's testimony, treatment history, and medical evidence and identified record evidence supporting the RFC). Furthermore, that conclusion is supported by substantial evidence.

In November 2021, Baker herself reported that her medication was working "very well" and requested a refill. [TR at 61, 625]. At her November 2022 follow-up, she stated that her headaches had "eased down" and that she had taken rizatriptan only once during the relevant period. [TR at 65, 1086]. At her January 2024 neurology visit, Baker denied nausea, vomiting, and photophobia entirely. [TR at 66, 2201]. At the hearing, Baker testified that medication decreased her symptoms "to a certain extent," although she did not elaborate further. [TR at 99]. This pattern of documented improvement provided the ALJ with a sufficient basis to find Baker's subjective complaints not entirely consistent with the record as a whole. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("Impairments that are controllable or amenable to treatment cannot support a finding of disability.").

Baker contends that the severity of her symptoms and limitations, if properly credited, would compel additional RFC limitations such as off-task time or absenteeism that could have altered the Step Five outcome. This argument fails for two reasons. First, Baker's own treatment records also provide some evidence inconsistent with the degree of severity alleged at the hearing. In January 2024, for example, Baker denied nausea, vomiting, and photophobia, and the record reflects that her migraines had improved with treatment. [TR at 66, 2201]. Although this evidence does not foreclose the possibility that Baker experienced more significant symptoms at other times, the ALJ was entitled to consider it in evaluating the consistency of her subjective allegations with the record as a whole. Moreover, the question before the Court is not whether the evidence could support additional limitations, it is whether substantial evidence supports the limitations the ALJ actually assessed. Here, the ALJ considered Baker's testimony regarding the duration and residual effects of her migraines but found her allegations concerning the intensity and limiting effects of her symptoms not entirely consistent with the record.

Second, and more fundamentally, Baker bears the burden of demonstrating that her impairments result in functional limitations beyond those included in the RFC. *Spence v. Comm'r of Soc. Sec.*, 2020 WL 1818041, at *3 (E.D. Mich. Jan. 23, 2020). The ALJ considered Baker's reported symptoms, treatment history, medication effectiveness, daily activities, and the objective and other medical evidence, and reasonably concluded that the record did not support limitations

beyond those incorporated into the RFC. Baker identifies no medical evidence connecting her migraines to specific functional limitations and, thus, Baker has not met her burden of establishing that such restrictions were warranted. *Blackburn v. Bisignano*, No. 6:25-CV-82-HAI, 2026 WL 1018333, at *12 (E.D. Ky. Apr. 15, 2026).

Finally, the RFC was not silent on Baker's migraines. The ALJ incorporated postural and reaching restrictions to prevent aggravation of headaches, environmental limitations on concentrated noise exposure and pulmonary irritants to address known migraine triggers, and limited Baker's exposure to conditions that could aggravate her pain or pose a danger to her to account for reduced concentration attributable to pain symptoms. [TR at 53, 55]. These restrictions reflect a considered, record-based attempt to accommodate Baker's migraine impairment. That Baker believes additional restrictions were warranted does not render the ALJ's assessment unsupported. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").

Accordingly, the ALJ's evaluation of Baker's migraine-related subjective complaints was supported by substantial evidence and applied the proper legal standard under *Duncan* and SSR 16-3p.

Turning back to the Step Three analysis, although the ALJ's discussion at that stage was brief, the subsequent discussion of Baker's migraines provides the factual findings necessary to understand why the ALJ concluded that her migraines did not

rise to listing-level severity, and, thus, permits meaningful judicial review. As discussed above, the ALJ thoroughly reviewed Baker's subjective complaints, while also noting the improvements demonstrated in the record, particularly Baker's reports of the improvement with medication. The record does not sufficiently establish the functional consequences contemplated by SSR 19-4p to demonstrate equivalence to listing 11.02B. Although Baker reported recurring migraines, accompanied at times by nausea, photophobia, phonophobia, blurred vision, and prolonged residual symptoms, the longitudinal record reflects improvement with treatment, including reports of only four to five migraine days per month and, by January 2024, denial of nausea, vomiting, and photophobia. Nor does the record contain a prior administrative medical finding or medical expert evidence supporting equivalence. Therefore, the ALJ's findings are supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). The Court is not permitted to weigh the evidence to determine whether it might support a different result. *Id.*

## IV. CONCLUSION

Upon consideration of the parties' respective briefs and independent review of the ALJ's decision and record evidence, the Court finds that there is no merit in Baker's arguments that the ALJ's decision should be reversed. Furthermore, substantial evidence supports the Commissioner's decision. For all the reasons discussed, and the Court being sufficiently advised, **IT IS ORDERED** that the final

decision of the Commissioner denying the application of Kelli Baker for disability and disability insurance benefits is **AFFIRMED**.

Signed this the 27th of August, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY